## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **EMMA L. REID**, *and* <br> **Law Firm of E. L. Reid, LLC** <br> Baltimore County, Maryland <br> *Plaintiffs* <br><br> v. <br><br> **EMMA REID**, <br> Pen name / author of <br> *"What A Girl Wants"* series, <br> **Speedy Publishing LLC** <br> d/b/a Third Cousins, *and* <br> d/b/a Snag Books, LLC <br> 40 E Main St, Newark, DE 19711-4639 <br><br> **Private Owner** of the web domain names: <br> Speedypublishing.com and <br> Snagbooks.com, *and* <br><br> **GoDaddy Operating Company, LLC,** <br> **GoDaddy.com, LLC,** <br> d/b/a **Domains By Proxy, LLC,** *and* <br> **GoDaddy Payments, LLC** <br> 100 S. Mill Ave, Suite 1600, <br> Tempe, AZ, 85281 <br><br> **Nextone, Inc. dba Palmetto Publishing** <br> 1501 Belle Isle Avenue <br> Suite 220 <br> Mount Pleasant, SC 29464 <br><br><br> *Defendants.* | Civil Action No. _____ <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> Jury prayed. |

## <u>ORIGINAL COMPLAINT</u>

Plaintiff Emma L. Reid, by and through undersigned counsel, alleges as follows:

**NATURE OF THE ACTION**

1.    This is an action for invasion of privacy, including appropriation of Plaintiff's name, likeness, identity, and persona, false light invasion of privacy arising from Defendants Speedy Publishing LLC, *doing business as* Third Cousins (Adult Romance), *and* Snag Books LLC, publication and sale of romance novels under the name "Emma Reid" and related promotional materials that use or closely evoke Plaintiff's identity and distinctive public rhetorical style without authorization.

2.    Defendants' conduct has caused Plaintiff reputational harm, emotional distress, and unwanted public attention. As a result of the publication and online sale of the works at issue, third parties have formed mistaken impressions about Plaintiff, including assumptions about Plaintiff's interest in romantic and sexual communications and conduct, personal desires or curiosity. The publication having no clear way to contact or verify its author has caused people around Plaintiff to respond to Plaintiff with: suspicion about whether she secretly publishing these novels, lust and inappropriate attention from individuals who searched her name online in anticipation of professional meetings, and intrusive, unwanted, and uninvited inquiries into her personal life by associates and near strangers, including potential employers and their staff, and even at one point a classmate and future colleague.

3.    The inflammatory nature of the alternative name Speedy Publishing LLC chose for publishing their romance novels, *Third Cousins (Adult Romance)*, is objectively and patently offensive to the vast majority of the public, and the Defendants knew or should have known that anyone associated with such publishing would be disgusted, appalled, and scared for their reputation in the community if they were to be associated with such a publisher.

4.      Defendants' use of the pen name, Emma Reid, and characters with similar pursuits and interests as the Plaintiff's, and book descriptions creating a stereotyped caricatures of women and their romantic interests, had plot lines roughly resembling Plaintiff Emma L. Reid's academic life and related behaviors, such as being difficult to interact with because she was always studying something, rebelling against traditional patriarchal expectations of women, also mirrored the topics of her musings and announcements to friends and family online about her academic pursuits which began in 2013, roughly the same time Defendant publisher was established.

5.      Defendants' use of the pen name, Emma Reid, and characters with similar pursuits and interests as the Plaintiff Emma L. Reid, and book descriptions written in a similar rhetorical style to the Plaintiff Emma L. Reid, along with the offensive content and publisher pseudonym, *Third Cousins (Adult Romance)*, would seriously discourage reasonable persons, including individuals and businesses, from wanting to associate with the student, writer, and now attorney, Emma L. Reid. This predictably would isolate anyone attempting to write professionally from opportunities and associations related to writing and a semi-public professional life.

6.      Defendants' actions as described herein would cause serious emotional distress to reasonable people in substantially similar circumstances.

7.      Defendants Speedy Publishing LLC et al know or should have known that making themselves uncontactable would further injure and deter anyone with grievances related to its publishing, and aid and abet a fraud on the public and the subjects of its actual malice.

8.      Defendants, GoDaddy.com LLC et al, d/b/a Domains By Proxy, LLC knew or should have known that its actions in providing completely private domain services could be abused in the same manner that Defendants Speedy Publishing LLC et al did abuse them.

9.     Defendants, GoDaddy.com LLC et al, d/b/a Domains By Proxy, LLC profited from and advertised this experience to anyone and everyone possible. They originated the idea obviously knowing lawsuits would ensue and that this service could be used abusively to harass, intimidate, harm, and/or profit from other people's identities and reputations.

10.     Defendant Nextone, Inc. doing business as Palmetto Publishing profited from the Defendant pen named Emma Reid, knowingly and brazenly, without inquiring into the legitimacy or any intent to harm or appropriate another's likeness.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

12.     This Court has personal jurisdiction over Defendants because Defendants purposefully directed the conduct at issue into Maryland and caused harm in Maryland, by choosing a persona and pen name objectively similar enough to the Plaintiff to harm their reputation in the community where they live.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions orchestrated by the Defendants giving rise to the claims occurred in this District.

## PARTIES

14.     Plaintiff Emma L. Reid is an individual residing in Baltimore County, Maryland.

15.     Defendant Speedy Publishing LLC is a limited liability corporation whose only public address is in Delaware, and who appears to be doing business as Speedy Publishing LLC, *Third Cousins (Adult Romance)*, and Snag Books LLC.

- 4 -

16.     Speedy Publishing LLC's online presence appears mostly directed to K-12 schools and educators who are looking for educational content suitable for specific ages and learning development goals. Except for one web page advertising romance novels under their objectively offensive pen name, *Third Cousins (Adult Romance)*.

17.     Speedy Publishing LLC used the web domain name speedypublishing.com to advertise and collect payments for their products. It is unknown who the actual owner of that domain name is at this point because of the use of a service provided by GoDaddy.com LLC et al via their subsidiary Domains By Proxy, LLC.

18.     Defendant Speedy Publishing LLC through Defendant Domains By Proxy, LLC maintains a related web page, speedypublishing.com/collections/third-cousins, directed at people interested in incestuous sexually suggestive romance novels.

19.     Use of the pen name *Third Cousins (Adult Romance)* is objectively offensive, confusing and uncomfortable to be associated with. Any reasonable person would not want to be associated with such a pen name.

20.     Defendant Domains By Proxy, LLC provides private domains for Defendant Speedy Publishing LLC and provides or provided a private domain for Snag Books LLC, snagbooks.com, until it was suppressed or discontinued by its owner.

21.     The identity of the actual owner of snagbooks.com at all times relevant to this case is at this time unknown and unknowable. This was the intentional design of GoDaddy.com, LLC et al.

22.     Defendant Domains By Proxy, LLC is registered in Arizona, as a Foreign LLC doing business in Arizona, their principal place of business or headquarters is unknown. This was the intentional design of GoDaddy.com, LLC et al.

23.     Defendants Domains By Proxy, LLC, Godaddy.com, LLC, GoDaddy Operating Company, LLC, and GoDaddy Payments, LLC all share joint and several liability for the misappropriation and related torts alleged against Defendants Speedy Publishing LLC and Snag Books LLC that caused Plaintiffs damages because they knowingly aided and abetted the misconduct and even encouraged it through their advertising.

24.     Defendants Nextone, Inc. d/b/a Palmetto Publishing is jointly and severally liable for the abusive publication of the author pen named Emma Reid to the real person, Plaintiff in this case, Emma L. Reid, as alleged herein.

## FACTUAL ALLEGATIONS

25.     Plaintiff has maintained a distinctive online writing style in public and semi-public postings to family, friends, and other contacts, characterized by a friendly, academic tone, clearly directed to close friends and family, including updates about her academic pursuits and sometimes personal struggles.

26.     On May 5, 2003, Plaintiff Emma L. Reid, as pregnant minor seventeen-year-old was married to Christopher Thomas Matthews and thus changed her last name to his last name.

27.     In 2009, Plaintiff started an online philosophy and news blog called *A Collection of Selves* on Wordpress.com which, over two to three years, garnered over 60,000 visits from the U.S. and around the world.

28.     In 2010, Plaintiff officially divorced her husband of seven years, Christopher Matthews, but she maintained her married name to shield her children from the attention related to her divorce.

29.     In 2012, considering all available information and belief, Speedy Publishing LLC was founded by Scott Collins, and eventually established in 2013 as a Delaware corporation operating out of Newark, DE, within walking distance to the University of Delaware campus.

30.     In 2013, Plaintiff started school at the University of Maryland, Baltimore County attempting to complete a Bachelor of Art in Psychology and expressed her interests and struggles online to her community of friends, family and acquaintances dealing with the subject matter of her research.

31.     In 2013, Plaintiff met an abuser who over the next year became physically abusive and controlling, going as far as to place cameras around their house, break into her accounts by socially engineering the situation of having access to them through a gifted tablet which he stole and said he hadn't been able to help locate, and abused this access to show up at their residence at random times throughout the day, to assert his dominance, and to let her know without using words to express the fact that he had been stalking her.

32.     From 2014 to 2015, and especially violently in February 2015, Plaintiff was raped and assaulted so seriously and forcefully and without consent that she suffered physical injuries and pain that have persisted to his day. This also triggered acute stress disorder and a later diagnosis of post-traumatic stress disorder. Plaintiff's memories of being raped as a teenager began to persistently interfere with her functioning at this time as well, since the constant pain reminded her of not only the event that preceded it, but also those events from when she was 12 years old. She lived in terror of it happening again or of people finding out what she was going through.

33.     In April 2015, Plaintiff finally found somewhere else to live and sought help from police and lawyers, and medical attention for those injuries. Police and prosecutors were unwilling to help, and

physicians and attorneys treated her with skepticism and derision. Turning her away or ignoring her ongoing expressions of unrelenting pain as if she were hysterical or of unsound mind.

34. On February 26, 2016, Speedy Publishing LLC published the first of a series of "romance novels" under the dual pen names, Emma Reid (author), and Third Cousins (publisher) and advertised it for sale. Speedy Publishing LLC then released five more books in the series, the last being published on the same day. This information was unknown to Plaintiff and she had no reasonable reason to believe that she should be on the lookout for such a novel, or that it would mark the beginning of the misinformation campaign that harmed her.

35. In 2017, Plaintiff graduated with her Bachelor of Art in Psychology from University of Maryland, Baltimore County. For four years she had considered going on to a PhD in Psychology through the support and mentorship of the McNair Scholars program. She continued to provide updates about school for family and friends online.

36. In 2018, Plaintiff began a Master of Science in Criminal Justice at University of Baltimore College of Public Affairs. During that time, she worked on issues related to the criminalization of the immigration system and how law enforcement could improve their responses to immigrant victims of crime and victims of domestic violence. She continued to provide updates for family and friends online.

37. In 2018, for eight months, Plaintiff worked for an Immigration defense firm in Towson called the Law Office of Katherine Canto where she learned about immigration law and other international legal issues. She continued to provide updates for family and friends online.

38. In 2019, Plaintiff graduated with her Master of Science in Criminal Justice and founded the eCommerce bookstore, Apt13Books.com.

39.     From 2019 to 2024, Defendant pen named Emma Reid published enough new books to now (currently) be listed as the author of 13 books by OpenLibrary.com, adding to market confusion and the appearance of relatedness of the pen name to the Plaintiff.

40.     In 2020, Plaintiff started pursuing her Juris Doctorate at University of Baltimore School of Law. She continued to provide updates for family and friends online.

41.     On July 21, 2021, Plaintiffs birthday, unbeknownst to her, the pen named author, Emma Reid, used Palmetto Publishing to publish Mistress of Rye, another romantic fiction. The author's description of themselves was now suddenly available, and it reads:

> "Emma Reid has travelled extensively throughout her life and has lived in several different countries including England. She is a retired psychologist who has published professionally, but, this is her first work of fiction. As a fan of both historical fiction and romance novel, she aims to create intriguing love stories on the background of the Regency and the Victorian periods. Emma Reid and her husband live on the ocean in Florida. They love travel and late afternoon walks on the beach."

42.     In 2021, Plaintiff was sexually assaulted by a friend who worked for: the University of Maryland Medical Center as a trainer, the Baltimore County Fire Department, and several volunteer fire departments around Baltimore County.

43.     When she made reports about this to her local police precinct, the Cockeysville precinct, she was met with derision and contempt and was even sexually harassed by the officer who wrote the initial police report on the matter.

44.     Baltimore County Police Officer Offutt wrote the report as if Plaintiff had consented to the assault. He interrogated her, and got so close to her physically that she felt backed up against the glass partition in the foyer of the police department. He never offered a private room to talk in, and

stood inches from her face for an uncomfortably long period of time that felt menacing and adversarial to Plaintiff.

45.    After finally retrieving a copy of the report, Plaintiff made multiple attempts to correct the issue, but the precinct and the prosecutor's office were skeptical and subsequent changes were unproductive--and actually counter-productive to asserting Plaintiffs truth.

46.    The initial report was written as a "suspicious condition" report rather than a report and investigation of a rape or sexual assault. No records of the investigation or follow-up was made available to the Plaintiff.

47.    In 2021, the first of two physicians to place their erections against her during a doctor's physical exams occurred at the University of Maryland Medical Center which befuddled and confused the Plaintiff and triggered her anxiety and traumatic memories about the 2014 to 2015 sexual assaults that had complicated her efforts to seek appropriate medical care for the subsequent orthopedic issues.

48.    In 2022, Plaintiff ran for public office and won as Emma Lynn Matthews in Baltimore County, Maryland. She continued to provide updates for family and friends online.

49.    In the fall of 2022, Plaintiff, after using her student loan money to purchase out-of-pocket a much-needed MRI that her doctor had ordered but her health insurance refused to pay for, her health insurance approved a substantially similar MRI.

50.    Plaintiff's insurer subsequently stopped insisting that she continue physical therapy or go back for more gynecological and gastrointestinal exams.

51.    By the time the second MRI was evaluated by an orthopedic surgeon, she had changed health insurers, and the visit to the surgeon was paid for through her new employer-sponsored insurance.

52.    Both MRIs showed that there was virtually no invertebrate disc at her L5 – S1 which would cause the same symptoms that started and never ceased after the 2014 to 2015 assaults which left her with permanent nerve damage. The new health insurer then approved a surgery called an inter-body fusion.

53.    By the time of the 2022 discovery, the 6 year statute of repose had elapsed for medical malpractice and Plaintiff was in so much pain on a regular basis for so long it had limited her earning potential and prospects for being able to pursue anything other than finishing her now very expensive education and going home and laying in bed or walking around to relieve the pain, and working from home as much as possible. She isolated herself to cope with her limitations and her hypersensitivity to outside stimulus from an overwrought nervous system, and continued to communicate mostly with friends and family online rather than in person.

54.    Now disabled, she also needed the help she received raising her kids in shared custody situations and could not in good faith assert in court that she could carry out full custody on her own.

55.    The disability tolling statute in Maryland is also so strict that Plaintiff could not toll her claim based on her new disabilities which had begun with the abuse she suffered from 2014 to 2015.

56.    Plaintiff was not a lawyer yet and lacked confidence in her ability to bring the case on her own considering how difficult everyday life had become.

57.    Plaintiff needed to mitigate her damages by not dropping out of school after investing hundreds of thousands of dollars of borrowed funds into it.

58.    In June 2023, six months after her inter-body fusion, she was rear-ended by two army recruits who claimed to be driving their mother's car, last name Hoover. This caused continued

disability and disfunction, and new problems, and limited the chance she would have had to reap the full benefits of her inter-body fusion.

59.    In the fall of 2023, the second of two physicians to place their erections against her during a doctor's physical exam occurred at ATI Physical Therapy in Hunt Valley which befuddled and confused the Plaintiff and triggered her anxiety and traumatic memories about her previous sexual assaults that had complicated her efforts to find appropriate medical care.

60.    Plaintiff reported the conduct that week to both the attorney supervising her and the Board of Physical Therapists.

61.    Also in the fall of 2023, Plaintiff was taking an evening class that she had to ask her employer's permission to go to and gave that employer information about the class time and location and class subject.

62.    While taking that course, a man who alleged to know the employer and their family tried to be friendly with Plaintiff, and after class started trying to have illicit conversations with her about her sexuality and her sexual interests, and pestered her so continually and offensively about these matters that Plaintiff had to address his rudeness publicly in class in earshot of her classmates and professor, and then file a Title IX complaint before he discontinued the behavior.

63.    In October of 2024, Plaintiff returned to her maiden name, Emma Lynn Reid, in anticipation of graduating law school with her maiden name on her diploma.

64.    In 2025, Plaintiff graduated from law school and earned a Juris Doctorate but asked permission not to walk for graduation or be mentioned in the ceremony. This request was honored by the school.

65.    In November and December 2025, Plaintiff began looking for jobs as a licensed attorney in Maryland.

66.    In December 2025, when interviewing for a job, Plaintiff was asked about romance novels seemingly out of the blue. Plaintiff was confused and demurred.

67.    A few months later, she met with a friend who was also an attorney, who out of nowhere brought up that she really liked romance novels. Plaintiff was confused about the introduction of the topic and demurred explaining she doesn't read them.

68.    The mysterious nature of the author and the similarity in the author's persona to the Plaintiff's interests misled at least two attorneys in Maryland to suspect she was the author, and who were brave enough to express their interest in romance novels to her in an attempt to figure it out.

69.    In January 2026, Plaintiff started the Law Office of E. L. Reid, LLC and styled her naming and marketing as the first initial, middle initial, last name format as a way to differentiate herself from the pen name used by Speedy Publishing LLC, Emma Reid.

70.    In May of 2026, Plaintiff opened a business banking account and attempted to use her moniker elreidesq as the private username for her business banking. The banker who assisted her told her she could not because someone in Texas was already using it.

71.    Despite her efforts to differentiate herself, Plaintiff believes that the shady nature of the publisher and its novels may mislead others, or have mislead others, as to her personal interests, sexual predilections, and desire for publicity about intimate subjects relating to romance and desire.

72.    Compounding this issue, the constant search for work that Plaintiff had to undertake to find positions, and her disabilities keeping her tied to remote work, meant that her public persona online was often celebratory of her accomplishments and calibrated to give the impression of professionalism

but personalness, so that potential employers could have a chance to get to know who she is and consider employing her.

73.    Plaintiff constantly updated her LinkedIn and her resume while searching for her first attorney job and applied to many job postings with the intent of finding supportive employment that paid enough money to live on.

74.    During this time, her manager and company at times barely interacted with her and addressed her concern about money with skepticism, as if she was running a successful business on the side.

75.    When Plaintiff reached out from the beginning of that working relationship to supervisors about the sexual assaults she experienced, she was met with silence.

76.    During that time, Plaintiff's e-commerce bookstore, Apt13books.com carried losses every year, and will now likely will be reclassified as a hobby rather than a business unless she terminates or changes its form.

77.    Plaintiff focused all of her efforts on work and school, looking for better employment, caring for her family, and managing her disabilities which detracted from her ability to attend to making the bookstore run.

78.    On information and belief, Defendants authored, published, marketed, distributed, and/or sold one or more sexually suggestive or explicit romance novels and related promotional materials that used Plaintiff's name, likeness, identifying characteristics, personal history, or closely identifiable persona.

79.     On information and belief, the works and related promotional materials also appropriated Plaintiff's distinctive rhetorical style as used in her online postings, in a manner intended to suggest that the works were based on, endorsed by, or drawn from Plaintiff's personal life.

80.     The works were made available for sale online through public-facing platforms, including speedypublishing.com, and were accessible to the general public in Maryland and elsewhere. Reviews of the books are also available on Goodreads.com.

81.     As a result, third parties who encountered the works or promotions associated Plaintiff with the content of the novels and mistakenly believed that Plaintiff openly discussed sexual matters, including intimate and personal subjects, and desire for intimacy, in her own public communications.

82.     These misimpressions have caused Plaintiff embarrassment, reputational harm, anxiety, and unwanted attention from strangers and acquaintances.

83.     Plaintiff has a history of trauma-related conditions, including post-traumatic stress disorder, that are aggravated by unwanted public attention to sexual matters and by the fear that others may learn more intimate details of prior sexual victimizations that Plaintiff suffered.

84.     Defendants knew or should have known that publication of the works using Plaintiff's identity and style would expose Plaintiff to unwanted publicity and emotional harm.

85.     Plaintiff objects to the use of the pen name and likeness, but the publisher has yet to respond to her requests for information, and as stated herein supra, have made themselves so difficult to contact that she does not expect anything short of a lawsuit will garner a response.

86.     Plaintiff demands that Defendants cease and desist, and discontinue the publication, distribution, and/or promotion of the challenged materials.

## COUNT I

### Appropriation of Name, Likeness, Identity, and Persona

87.    Plaintiff incorporates paragraphs 1 through 86 as if fully set forth herein.

88.    Defendants appropriated Plaintiff's name, likeness, identity, and/or persona for Defendants' own benefit in connection with the publication, promotion, distribution, and sale of the sexually suggestive and/or explicit romance novels and related materials.

89.    The challenged use was not incidental, newsworthy, or otherwise privileged, but was intended to capitalize on Plaintiff's identity, public image, and distinctive expressive style and circumstances.

90.    Plaintiff did not consent to Defendants' use of her name, likeness, identity, or persona.

91.    Defendants' conduct proximately caused harm to Plaintiffs, including emotional distress, reputational injury, loss of privacy, and related damages.

WHEREFORE, Plaintiffs requests judgment against Defendants for compensatory damages, punitive damages where available, costs, attorneys' fees as permitted by law, injunctive relief, and such other relief as the Court deems just and proper.

## COUNT II

### False Light Invasion of Privacy

92.    Plaintiff incorporates paragraphs 1 through 91 as if fully set forth herein.

93.    Defendants gave publicity to matters concerning Plaintiff that placed Plaintiff before the public in a false light.

94.    The published materials and associated promotional content created the false impression that Plaintiff openly discussed or endorsed the same sexually suggestive or explicit subject matter in her

own public life and communications, and/or that Plaintiff was the source or subject of the intimate content portrayed.

95.    The false light in which Plaintiff was placed would be highly offensive to a reasonable person in the same or similar circumstances.

96.    Defendants knew of or acted in reckless disregard as to the falsity of the published matter and the false light in which Plaintiff would be placed.

97.    Defendants' conduct proximately caused Plaintiff emotional distress, humiliation, anxiety, reputational injury, and other damages.

WHEREFORE, Plaintiff requests judgment against Defendants for compensatory damages, punitive damages where available, costs, attorneys' fees as permitted by law, injunctive relief, and such other relief as the Court deems just and proper.

## COUNT III

### Intentional Infliction of Emotional Distress

98.    Plaintiff incorporates paragraphs 1 through 97 as if fully set forth herein.

99.    Defendants' conduct was intentional or reckless.

100.    Defendants' conduct was extreme and outrageous.

101.    Defendants' conduct caused Plaintiff severe emotional distress.

102.    Plaintiff's emotional distress was severe and medically significant.

WHEREFORE, Plaintiff requests judgment against Defendants for damages and other appropriate relief.

## COUNT IV

### Injunctive and Declaratory Relief

103.    Plaintiff incorporates paragraphs 1 through 102 as if fully set forth herein.

104.    Plaintiff lacks other adequate remedies at law.

105.    Unless enjoined, Defendants will continue to publish, distribute, market, and profit from the challenged works.

WHEREFORE, Plaintiff requests an order enjoining further publication, sale, distribution, and promotion of the challenged materials to the extent they unlawfully use Plaintiff's protected identity or create actionable false light, and such other relief as the Court deems proper.

### PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants as follows:

A. Compensatory damages in an amount to be proven at trial;

B. Punitive damages where permitted;

C. Injunctive relief;

D. Costs and allowable attorneys' fees;

E. Pre- and post-judgment interest as allowed by law; and

F. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: May 11, 2026                    Respectfully submitted,


*Emma L. Reid*
Emma L. Reid (May 11, 2026 11:01:49 EDT)
E. L. Reid, Esquire (2511211139)
Law Firm of E. L. Reid, LLC
309 Lord Byron Ln Apt 204
Cockeysville, MD 21030
443-845-7142
elreidesq@gmail.com
*Pro Se Counsel for Plaintiffs*

- 19 -